Case number 16-2985, Pickle v. Roderick Allen. All right, good afternoon again. Both counsel, please step up to the microphone. Tell us who you are and who you represent. Good morning, Your Honors, or afternoon, pardon me. My name is Karen Weiberg. I'm with the State Appellate Defender's Office, and I'm here today representing Robert Allen. Hello, Assistant State's Attorney John Alters, representing the people of the State of Illinois. All right, thank you, counsel. Again, we'll do about 15 minutes per side. We may extend that if we have lots of questions. We'll save the last five minutes for rebuttal. And with that, Mr. Weiberg, you may begin when ready. Apologize, I bent my throat a little bit. I'm just trying to keep it to a minimum. May it please the Court. Your Honors, we have argued that the Post-Conviction Hearing Act violates due process as acquired to Roderick Allen, a severely mentally ill individual who, because of that mental illness, is incapable of making that minimum showing that People v. Hodges requires in order to receive the appointment of counsel and in order to assist in a collateral proceeding. And, Your Honors, we have not challenged the act broadly. We have not challenged that for the vast majority of petitioners, the Post-Conviction Hearing Act does exactly what it's supposed to do and provides meaningful access to the Court to collaterally challenge their convictions. But Mr. Allen is not the vast majority of petitioners. And that's really, in many respects, the heart of this case. Now, Mr. Allen, in the first instance, as we've discussed extensively in our briefs, is a severely ill individual. And he is a severely mentally ill individual. But it's not merely the fact that he is mentally ill that gives rise to the issue here. There are many people in the justice system who suffer from a variety of afflictions. But it is the specific symptomology that Mr. Allen suffers from that the record very amply demonstrates that leads to the problem that we have before us here today. And specifically, Mr. Allen is delusional. At least four different experts have diagnosed him as this. But it's not just, again, the fact that he's delusional. It's the specific nature of the delusions that he suffers from. And really, obviously, we've discussed a lot of those in great depth in our briefs. We won't go into them all now. But there are two sort of aspects to those delusions that I'd like to address here. And the first is Mr. Allen's very firm, unshakable belief that the legal system has been and is being manipulated against him. And this is important, Your Honors, because this goes beyond sort of a vague belief. This isn't a matter where we have someone who just sort of generally believes that people are out to get him. He has some very specific beliefs about how this worked out, about who is responsible for his past legal troubles, including his conviction for attacking his father, including the arrests that he was on bond for at the time of the present incident. And, Your Honors, it goes beyond all of that into his trial. He does not accept the legitimacy or even the reality of a great deal of what happened at his trial. He believes that an imposter showed up as one of the witnesses. He believes that an autopsy photo was fake. He believes that a third stab wound was inflicted, presumably by a police officer. We're familiar with those facts, and I was the author of the last iteration on this case. And I want you to address the procedural morass we're in because we have, you know, you're bringing to us an as-applied challenge in the first instance at the appellant level. And that's the hurdle we have to get over here, is how do we get past the waiver and forfeiture issues when, you know, he's been filing a post-conviction petition seemingly every few months. This is endless stream of them. They're repetitive, all right? They raise a lot of the same issues. And your office intercepted what this was and got your hands around it and came up with this argument, all right? But the problem is, you know, you abandoned what he raised below. Okay, that's fine. And you raised for the first time this new issue. How do we write a decision that gives you the relief you want? Well, Your Honor, first of all, as to forfeiture, I suppose there is in some respects there are various levels of forfeiture. But when we talk about constitutional issues, generally speaking, a challenge to the constitutionality of the statute can be raised at any time, including in this court. Now, there is, and as the Illinois Supreme Court has recently discussed, there is something of an exception to that for as-applied challenges. But this is not a blanket bar on raising as-applied challenges here in this court in the first instance. And as the Supreme Court in Harris, and I'll just quote paragraph 41 there, the critical point is not whether the claim is raised on collateral review or direct review, but whether the record has been developed sufficiently to address the defendant's constitutional claim. Now, Your Honors, I have no question that it is generally the case that an as-applied challenge requires an evidentiary hearing below in order to develop that record. But this is not the ordinary case. We have at this point a record of roughly 8,000-some pages. We have evaluations from multiple psychiatric experts addressing these very issues. We have literally thousands of pages of Mr. Allen's own pro se writings demonstrating not only that he continues to suffer from these very serious and severe delusions, but demonstrating that because of those delusions, he is unable to meaningfully participate in post-conviction proceedings. So we would say that like a case like People v. Holman, which the Illinois Supreme Court case took an as-applied challenge in the first instance, we would say that in this case the record is sufficient. And we would further say that from, I guess, what I would call an equitable or a practical standpoint, there is no other way that this issue could ever be raised. As we've argued extensively in our briefs, Mr. Allen – oh, sorry. Let me say why I don't think that's correct and you tell me why I'm wrong. Okay? Because you could have, on this case, done an Anderson-Finley motion. All right? Say what you presented isn't going anywhere. And then recruited counsel to file a new petition on his behalf in the circuit court, raising this as an as-applied challenge in the first instance, along with a new post-conviction. Couldn't you have done something like that? Or why would that not have worked? Well, Your Honor, I have a couple of responses to that. And I'm going to think it through here a little bit. The underlying problem is your office doesn't work in the trial courts. No, we do not. And the public defender, Cook County, doesn't file post-conviction petitions for people. Absolutely. And the other – in essence, what we can do right now is, in many respects, controlled, of course, by the State Appellate Defender Act. I am authorized under the act, and I am authorized to act on behalf of our office, only in this court and only on those matters to which I am appointed. And therefore, I suppose you could say perhaps on some sort of side basis, maybe I could try to find an attorney. But then, of course, the question becomes, how does that attorney ever end up on Mr. Allen's case? Because as we've discussed, Mr. Allen vociferously objects to any contention that he is mentally ill. Mr. Allen would not want anything to do with any attorney that I would call and say, hey, you need to go help out Mr. Allen. And so assuming that I could somehow find an attorney who would be willing to do this for no money whatsoever and who could somehow file – I'm actually not even sure Illinois Procedure currently has a mechanism for this – but could somehow file some kind of motion to get into Mr. Allen's case despite Mr. Allen's objection, I'm not even sure if there is an existing mechanism by which outside of an order of court, an attorney could enter the case in that fashion. So if you're asking us to reverse the judgment below and send it back for appointment of counsel, that's what you're asking for, right? And so we send it back for appointment of counsel, and he says, meaning Mr. Allen, says, I don't want that counsel. I don't want any counsel. In which it's like this never-ending cycle, isn't it? It is, but this is the one way that we can see a light at the end of the tunnel of that cycle. And the reason being that once you have – once that counsel has been appointed, once there is an attorney on the case, the Supreme Court has recognized the existence of fitness-related proceedings and post-conviction proceedings. The problem is, and the problem for this case, is that all of those cases have dealt with situations where there was already counsel, which means that counsel could raise an issue of fitness in the circuit court. Now, if this court remains this case and orders the appointment of counsel, Mr. Allen, I have no doubt, will say, I don't want this person. Get them off my case. But Mr. Allen can only say that if he is fit and competent. And at that point, counsel can raise an issue there before the circuit court saying, Your Honor, we have all of this material. We have all this information. Mr. Allen is not fit to make that decision. And at that point, we can then begin to see proceedings there in the circuit court, in the first instance, that might – I won't say they definitely will because I don't know – that might have the potential, at least, to bring this case to a different position. Basically, I'm intermingling prosaic in the circuit court. Exactly. And at that point, then, someone could finally – and I think this is one of the most important things here – Mr. Allen has not had an attorney in the circuit court since well before he went to trial for first-degree murder. He did his own pretrial. He did his own trial. He did his own post-trial. If one time we can get an attorney down there who can simply review the case, who can possibly get him a psychological evaluation, something that we can't do here, someone who can raise things in the first instance, we might actually be able to litigate any potentially meritorious issues that exist and perhaps bring some kind of completion to those proceedings and ultimately vindicate Mr. Allen's right and the State's interest in seeing that due process ultimately is done for each post-conviction petition. The Post-Conviction Act in our State is a completely statutory remedy. Yes. It's not a right of common law. Right. And it envisions – it was designed so that you didn't need an attorney at the first stage. Yes. You could just get your foot through the door, right? So are you saying that we have the authority to appoint an attorney in order to direct the appointment of counsel at the lower level, outside the framework of the statute, because we must do that so that the entire thing becomes constitutional? Essentially, yes, sir. It's a matter of, you know, as cases like Matthews v. Aldridge recognize, as cases like People v. Porter from the Supreme Court recognize, the due process clause does still apply to post-conviction and collateral proceedings. And due process does require that meaningful opportunity, I believe is the word the Supreme Court used, that meaningful opportunity to utilize the act to collaterally challenge. As we discussed in the briefs, as the matter stands now, under the restrictions of the act as it exists, Mr. Allen does not have that meaningful opportunity. And it is well established that this Court has the authority to remand a case to the circuit court for the appointment of counsel. It's one of the most common outcomes of a post-conviction appeal. Usually when we bump it up to the second stage, though. Correct, yes. In this instance, again, we find ourselves in a, among other things, just a highly unusual procedural position because, among other things, we are maintaining that Mr. Allen has never been capable of doing this. And in a very real sense, Mr. Allen has never had an initial petition. He has filed many. But he is simply not capable of filing meaningful petitions. However, we would also say that even at this point, even in a successive petition, this Court can remand for appointment of counsel. And we would certainly argue that in this case, were this remanded as a successive petition, Mr. Allen's illness would definitely constitute cause to raise any issues at this point that should have been raised prior had there been a competent individual involved. If we were to remand for appointment of counsel, is that something statutorily the Cook County Public Defender would be able to do? Yes. The Cook County Public Defender is, I mean, they represent post-conviction petitioners at second stage or on successive petitions, which I suppose at that point those are generally second stage petitions, although the stage system gets a little strange in successive circumstances. But certainly that is something that the Cook County Public Defender, they have a PC unit, they represent people on PC petitions routinely, and they are certainly capable and able to do it. If Your Honors don't have any other questions, then I'll save whatever else I have for rebuttal. Thank you very much. Thank you. Mr. Walters, you may proceed when ready. Thank you. May it please the Court. The petitioner's challenge to the Constitution, or the challenge as unconstitutional in this case must fail for a number of reasons. Number one is there are only two paths that exist that could get the remedy that a defendant is seeking in this case. And I want to outline them, and I want to be very clear about them, because one of them applies regardless of what this Court does. And it's open to the SAD right now, notwithstanding the State Appellate Defender Act. The second point I want to make is that there is no bona fide doubt here that would require a remand in this case. There is no bona fide doubt of the petitioner's fitness in this case. And the third thing is that any constitutional challenge is essentially not right for adjudication at this stage. This is essentially putting the cart before the horse. There's a larger question that defense counsel is raising that would need to be addressed before any constitutional issue would be accepted by the Illinois Supreme Court. In fact, if a lower court were to just up and decide that the PC Act was unconstitutional, that would be a supervisory order issued not very long after by the Illinois Supreme Court on that. So the Illinois Supreme Court is very clear about what needs to be considered before a constitutional challenge needs to be addressed. Let me head right into the two paths that are already open for addressing just this point. The first is that, notwithstanding the State Appellate Defender Act, and it's not true that the State Appellate Defender is the only authorized to act in this Court, I've seen motions filed by the State Appellate Defender in the Circuit Court of Cook County requesting certain things. So that's, first of all, it's not true. But there's a prime directive that applies to all attorneys. It's on the Illinois Court's website. It's the Illinois Rules of Professional Conduct. And the Illinois Rules of Professional Conduct have a specific provision that applies to attorneys. It is a specific provision that deals with clients with a disability, clients with diminished capacity. That particular rule is 1.14 of the Illinois Rules of Professional Conduct. Are you getting to the point that they should have had an obligation to get a guardian appointed for them or something? The rule says that if counsel reasonably believes that their client has diminished capacity and can't make reasonable decisions on their own behalf in their best interest, then the rule authorizes a consultation. It doesn't require the SAD to appear in some other court. All it does is it requires the SAD to pick up the phone and contact certain agencies. Among them would be the Cook County Public Guardian's Office right here in Cook County. There's an office of the State Guardian that could step up under the Guardianship and Advocacy Act that I cited. Another is the Legal Advocacy Service that's also authorized by the Guardianship and Advocacy Act that I cited in my brief. So those three are examples of those remedies being used in a criminal setting where a guardian comes in and supplants in place of a defendant. In my experience in the last 30 years, usually it's brought up in trial proceedings such as this or in federal court, say, in a federal habeas petition or in a section 1983, something is wrong with the treatment in the Illinois Department of Corrections. So a federal civil suit is filed. It is done oftentimes in the name of a guardian. But that's a civil case. If it's 1983, it is a civil case. But our Illinois Supreme Court in People v. Owens specifically pointed to the ability of a next friend, a guardian, to step in and represent the defendant insofar as he could be in place of. Because keep in mind, if somebody is unfit, they're sidelined. They cannot participate in legal proceedings unless they have a guardian. And the law has provided for that in post-conviction proceedings, as I pointed out, our Illinois Supreme Court in Owens specifically cited to Widmore, Widmore v. Arkansas. What does Widmore v. Arkansas require? It requires a showing of diminished capacity and an individual who is willing to act in the best interest of the defendant. That's essentially the definition under Illinois law of a guardian. So, again, regardless of any decision that this Court makes today, defense counsel today could pick up the phone and call the Department of Corrections because that's an entity under their ethical obligations, that's an entity that is charged with the protection and care of their client in this case, the defendant. Now, the defendant specifically in his reply brief, the SAD's reply brief, disputes that it has that authority to seek the guardianship or the next friend. Do you disagree with their assertion? Absolutely, because they have an ethical duty to consult. Now, again, I'm not saying that they have a duty to run downstate and appear in some probate court. I'm not saying that they're authorized to do that. And I'm sure that the Illinois Supreme Court, in crafting the Illinois Rule of Professional Conduct, was aware of defense attorneys' various responsibilities and what they could and couldn't do. And it specifically says here, consult with those agencies, with adult protective agencies, such as public guardians, such as the state guardian. Consult with those entities and individuals, that's what the rule says, that can protect. If they consult, if they get a finding that he's incapacitated, then what? Then, then guardianship proceedings take place, a guardian is appointed, and then the guardian can work with whoever. I've seen this work with the guardians. And does this all happen by magic? I mean, who institutes it? Who represents him in the guardianship proceedings and all that? How would that happen? Procedurally, how would that happen? Under the Probate Act, that could be the public guardian or the state guardian. Either one can file a petition for guardianship, and they can ultimately represent the defendant in terms of seeking guardianship and can be appointed as guardian or guardian ad litem for that particular individual. So that already exists under the law. It's already statutory law. And that's something, as I said, that it doesn't require even any action by this court. The defense counsel could instigate all this by a few phone calls. It would not require a counsel to leave his office or represent a defendant in some other court. He would simply need to consult with attorneys from the Office of State Guardian Legal Advocacy Service or the Cook County Public Guardian, one of those entities. I would also recommend highly that a client be placed to a Department of Corrections. Defense counsel's position in this case is that his client is seriously mentally ill. As I say, the Department of Corrections is charged with the protection, the care and upkeep and the health of their inmates. If there's some sort of dereliction of duty here, at a minimum there should be a phone call. Now, what we're doing going this route, this guardianship route, why are there really good reasons for it? Number one, it helps to ensure the health and safety of the inmate. That's number one. Number two, it would enable defense counsel to attach something that's totally absent here, and that is evaluations, reports. Mental health professionals that have evaluated this defendant, if there are any reports, any treatment that he's received. The Uniform Code of Corrections specifies that the Department of Corrections is supposed to do certain things if they have an inmate who is mentally ill. It specifies treatment. It allows the Department of Corrections to seek treatment. How are we getting a little too far afield here? It's like watching a debate about social work. Because we'd have to deal with whether or not the circuit court properly dismissed this particular, whatever, the Fourth Post Division Petition, right? That's what we're here to decide. What they have put in front of us is that, as applied, the provision of the law, which does not give him an attorney at the first stage, is unconstitutional as applied. But I think the issue comes down to, is there some availability for a defendant to raise, or for somebody who is working in the best interest of the defendant to raise, any constitutional issues, any constitutional deprivations? I mean, what are they supposed to do if they make all these phone calls and all these agencies say, we're not going to do it? Well, I mean, they're not required to interpose themselves as, you know, seek guardianship whenever they find that the person, in fact, is in need of a guardian. They could say, you know, we're just not going to take this case. There's no property involved. Whatever the case may be. I suppose there's a public guardian down in the county where the jail is. Sure. And I imagine the public guardian might roll his or her eyes and say, we've never done this before, why do we do it now? Right. And at this point, we're supposing. That step hasn't been taken yet. So at a minimum, I would suggest that step needs to be taken first. Let's find out. Let's get to the bottom of this. That would be the appropriate thing. As I said before, health and safety of the inmate. That's one of the reasons to do this. Another is gathering reports, gathering information. Defendants have made it known, mental health experts, to say that the defendant is currently suffering from a mental illness. If those reports exist, then at least a phone call to Department of Corrections should be able to instigate either a report and evaluation or at least obtain that information so it could be given to the stakeholders at the circuit court so they could make a proper determination of next steps in terms of is there a bona fide doubt? Does there need to be a fitness hearing? Those sorts of things that are already laid out by our Illinois Supreme Court. And the third thing it does is it enables even an unfit defendant to still have somebody stand up for that person and seek post-conviction relief so they're not completely sidelined. In Owens, this exact question came up, and it was a prosecution actually that posed it to the Illinois Supreme Court and said, hey, if the defendant is ultimately found unfit, you're saying he gets remanded to the Department of Corrections and he can't do anything in post-conviction land until such time as he's found fit. And the Illinois Supreme Court then said, no, look to next front filings. Look to Whitmore v. Arkansas. So this is the path already laid out by our Illinois Supreme Court. There's already precedent on this about how to handle this. Now, the second track would be a more traditional track, which would be if there's some question about whether there's a bona fide doubt, the case would be remanded solely for post-conviction considerations. I'm sorry, not for post-conviction, for fitness considerations. This is in line with Owens and Johnson and Dale Paz, and the court would then proceed solely on the question of whether the post-conviction petitioner is fit, whether there's a bona fide doubt, what next steps need to take place in that instance. With respect to whether there's a bona fide doubt here, there isn't, and there's a number of reasons for that. What petitioner, I'm sorry, not petitioner, but defense counsel keeps pointing out is things that have already been addressed. This issue, this particular issue of he raises these delusional claims in his filings, in his pro se filings, and that indicates that he is delusional. That has already been substantially litigated already in the trial court. In fact, there was a fitness hearing. There were four mental health professionals that testified. I believe all of them were affiliated with Friends Clinical Services. They all testified, and what the defendant doesn't do in any of his briefs is address the fact that subsequent to that, the defendant was sent down to the Chester Mental Health Center. He was placed in the custody of the Department of Human Services, and he was put in Chester Mental Health Center. They never saw fit. In the six months that he was there, they didn't see any reason to give him psychotropic medication, antipsychotic medication. Somebody that is truly delusional is psychotic. They're in need of help of an antipsychotic medicine. This defendant was not administered that because in the opinion of the people that had the care and supervision of the defendant for six months of the mental health professionals at Chester Mental Health Center, they didn't find that this defendant was, in fact, delusional. They said he had a personality disorder, but they said he was not delusional. He was not psychotic, and he was fit. It was their opinion in January of 2006 that he was fit. That brought the case back to the Circuit Court of Cook County. He was then evaluated for a third time by Dr. Jonathan Kelly, who is a forensic psychiatrist with Forensic Clinical Services, who found the defendant fit. And again, Dr. Jonathan Kelly had a chance to evaluate the defendant for a fourth time in the Circuit Court of Cook County, and again found the defendant fit. So we have at Chester Mental Health Center, we have Dr. Jonathan Kelly, who's evaluated the defendant four times, both of them finding that the defendant is fit for trial. And fit for trial is a much higher burden than fit for post-conviction proceedings. They're different burdens as spelled out by the U.S. Supreme Court in People v. Alls. So in addition to all of that, I've got a couple minutes left. Yes, I want to try and wrap it up. The defendant in his brief, on page 31 of his opening brief, says some very interesting things about the defendant, and in fact that the defendant is able to say what he needs to say. Now that indicates that the defendant is fit for post-conviction proceedings because the defendant for post-conviction proceedings just needs to be able to communicate his constitutional issues. He did that in this case. He filed a law. As long as the defendant is sort of living in his own fantasy world. Well, not according to, at least at some point along the way, there was one doctor who said he's okay for trial. Right? But there were other medical doctors because he was in the care of the Department of Human Services who determined that he was fit. There was Dr. Jonathan Kelly. The issue came up on direct appeal. Now, it's an interrelated issue. I'll admit that it's not exactly the same issue, but it's a very interrelated issue, and that was his competence to represent himself. Now, competence to represent oneself at trial and competence or fitness for trial are essentially, not exactly the same thing, but essentially the same thing. This court addressed that already in its direct appeal, in its decision on direct appeal, and what's important about that is this court addressed the U.S. Supreme Court case of Indiana v. Edwards. And Indiana v. Edwards admitted that a court could actually impose more than just fitness for trial on a defendant, but it need not do that. But essentially, the baseline for competence to represent oneself is fitness for trial. This court found that defendant was competent to represent himself, looked at the record, looked at all these evaluations that were done by doctors. All of this was a record on the direct appeal. And this is one of the issues that I want to get to lastly, which is that this case isn't ripe for some sort of constitutional ruling at this point. All of this has been addressed on direct appeal. We're now on the fourth post-conviction petition. This is the third successive petition. So at a minimum, counsel has a duty to meet the cause of prejudice test, which has not been done in any of the briefing that I've seen. Cause of prejudice has to be dealt with. The U.S. Supreme Court has specifically said that, as applied challenges, require the record to be fully developed. I submit that it is fully developed and that defendant is not. There's no bona fide doubt here. But to the extent that, assuming you end or this court disagrees with me, there are procedures laid out for how to deal with that. You think there's no bona fide doubt of what? That he is unfit for post-conviction proceedings. As opposed to trial. There are different standards. With respect to people, respectfully request that this court affirm the dismissal of the post-conviction petition in this case. Thank you. Mr. Weiber? Let me start out with a question, if I may. Sure. In the appellate court, we have had a history with Mr. Allen in recent years where the court has entered orders, as we normally do, with pro se criminal defendants appointing your office. And then we've had a history with this particular defendant of he insisting to fire your office and we say no, there is no constitutional right to proceed pro se at the appellate court. And we cite a case. If we were to grant the relief you seek, which is sending it back to the circuit court, saying point counsel, we no longer have, we're in a different stadium, so to speak, and doesn't he have the right to insist on going pro se again back in the circuit court? And we're back to where we started from. Your Honor, he certainly has the right to request that, but at that point, as I think we discussed a little bit earlier, you have such a finding by the court of some kind of mental issue. But this is precisely where I think the greatest difference in this case emerges, is that at that point you have counsel who can raise the fitness issue. Counsel for the state referred to cases like De La Paz and Owens and Johnson. All of those cases considered fitness. And all of those cases considered it where there was already an attorney who could raise the issue. There is no one below who can raise the issue. No one has ever given trial court judges an obligation to sue or respond to or consider this in collateral proceedings. So at present there is no one who can address this. Now, if this court appoints an attorney, I have no doubt that Mr. Allen will seek to fire him. At that point, however, that attorney can file a motion there in the circuit court and say he is not fit to do this. And at that point further proceedings can take place. But we have never gotten that far, Your Honor. Is there a difference in the underlying jurisprudence with respect to whether or not, you know, the desire to be fired defense attorney can pop in and say no, don't fire me because you're crazy. In terms of the actual trial versus post-conviction. Because we have cases all the time where, you know, we have criminal defendants during the trial stage wanting to go pro se and the judge gives admonitions and we never have an attorney coming in that I've seen anyway saying my client is not competent to make that call. There are admonitions and the court has to make that decision as to whether or not they understand the risk they take by not having an attorney. Is there something different about post-conviction that triggers maybe a different level of ability of the court to ignore the defendants' insistence? I hope that makes sense. If I can, let me address that on two levels. The first one is let me just say actually that happened in this case. Mr. Allen tried to fire his first attorney, John Conniff, probably ten times. And John Conniff said to the court, we have concerns about fitness. And at that point, a fitness hearing was held and Mr. Allen was ultimately found unfit. So it may not be typical, but certainly for a severely ill individual, it's not unheard of for counsel to say, I know he's trying to fire me, but I don't think he's competent to act on his own behalf right now. And counsel for the state was referring to earlier that's in the rules of professional conduct, that they should say something at that point. Beyond that, as to whether there is a different bar or a different level in post-conviction as opposed to a trial, I believe the case law on the right to go pro se in post-conviction is a little bit vague, again, because it is not the constitutional right to representation. Therefore, it is also not the constitutional right to self-representation. And it may be a slightly lower standard, and there may be more room to move there as far as the court's ability to consider the administration of the court and everything else. But that being said, nonetheless, it remains the fact that if Mr. Allen is unfit, then he simply cannot make that decision. And at that point, further action has to be taken. If I may, I'd like to just sort of briefly address a couple of things. One, as far as these various administrative agencies that could maybe do something, this is a hypothetical that we have no reason to believe is a, real, and b, historically it has simply not happened. It might be that some good Samaritan out there could jump in and say, I want to act as the next friend of Robert Allen, but no one has done so. And no public agency is required to do so. And what we've alleged here is a violation of due process. Due process is not satisfied by hoping that some private actor or someone in an administrative office somewhere will decide to do something. If due process is satisfied, then Robert Allen has what he is entitled to, one opportunity for meaningful access to the courts to consider a collateral challenge. And that has not happened. A couple of comments regarding the record. We have, you suggested we don't have any evaluations in the record. We have multiple evaluations in the record. We have testimony in the record. We have a lot of psychological evidence in this case. We most certainly did address the fact that Mr. Allen has been found fit before. And as Drs. Kelly and Lobos both testified, Mr. Allen is perfectly capable of lying. And he actually is not bad at it. We have evidence in the record, examples in the record, where he told the people at Chester Mental Health one thing in order to pass a fitness evaluation while he was literally doing the opposite. No, I'm not mad at my lawyer. I want to work with my lawyer. As soon as he gets to the circuit court, he's trying to fire his lawyer again for the same reason. No, I was exaggerating when I said that the judge was conspiring against me. I was just upset. I didn't mean it. He filed multiple further motions to substitute the judge on those exact grounds. What we have before us today that no one had then is an 8,000-page record of over 10 years of collateral proceedings where Mr. Allen has continued to demonstrate his unwavering belief in every single one of those delusions that he may well have been able to deny in a 30-minute fitness interview. And so we certainly believe we have addressed that, and we certainly believe that this record shows that Mr. Allen is incapable of doing this. And I believe, just briefly, if this court were to determine that some form of fitness proceedings were appropriate at this point, our only request on that is, A, that counsel be appointed because Mr. Allen should not be appointed himself at a fitness hearing or should not be representing himself at a fitness hearing, and I think that would at least get us along the way. Mr. Weiberg, before we close out, I know the court has entered an order staying the other appeals from at least two other post-conviction petitions. Yeah, we have two appeals pending. In those orders, do either of you remember if we set a status date for a report? I don't believe – I think I suggested a status – I think I put a date in my motion. I want to say it was a year out because that was – it was just a date to choose. But I don't believe that was – I don't know if that was on the order. It was in the motion. This seems enough for us to look up, but I would ask, when this court does issue its resolution, one of the two of you should file a motion on the other two reminding the court that those are stayed and that they need to be unstayed or something else has to be done depending on where we're headed. All right? Absolutely. Thank you very much. Thank you very much, John. The matter will be taken under advisement and court will be in recess.